UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANETTE GLADYS NOEL,                      Case No. 14-11009

        Plaintiff,                      Stephen J. Murphy, III
v.                                        United States District Judge

COMMISSIONER OF SOCIAL                     Michael Hluchaniuk
SECURITY,                                  United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 10, 13)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On March 7, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Stephen J. Murphy, III referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkts. 10, 13). The cross-motions are now ready for report and recommendation.

B.    Administrative Proceedings

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on November 21, 2011, alleging disability beginning May 31, 2011. (Tr. 41). The Commissioner initially denied plaintiff's disability application on January 26, 2012. (Tr. 75-84). Thereafter, plaintiff requested an administrative hearing, and on November 2, 2012, she appeared with counsel before Administrative Law Judge ("ALJ") Andrew G. Sloss, who considered her case de novo. (Tr. 52-74). In a December 3, 2012 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 38-51). The ALJ's decision became the final decision of the Commissioner on January 10, 2014, when the Social Security Administration's Appeals Council denied plaintiff's request for review. (Tr. 1-6). Plaintiff filed this suit on March 7, 2014. (Dkt. 1).

For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 10) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 13) be **DENIED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **REMANDED**.

2

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff had past relevant work as a bookkeeper and as a
bookkeeper/secretary.  (Tr. 47).  The ALJ applied the five-step disability analysis
to plaintiff's claims and found at step one that between the alleged onset date
(May 31, 2011) and the day of the decision, plaintiff did not engage in any
substantial gainful activity.  (Tr. 43).  The ALJ also determined that claimant met
the insured status requirements of the Social Security Act through December 31,
2016, plaintiff's last date insured.  (*Id*.)  At step two, the ALJ found that plaintiff
had the following severe impairments: degenerative osteoarthritis of the bilateral
knees, status post right total knee replacement, and obesity.  (*Id*.)  At step three,
the ALJ found that plaintiff did not have an impairment or combination of
impairments that met or equaled one of the listings in the regulations.  (*Id*.)

The ALJ determined that plaintiff had the residual functional capacity
("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a). The
> claimant can occasionally use foot controls bilaterally.
> She can never climb ladders, ropes, or scaffolds and can
> occasionally climb ramps or stairs. She can occasionally
> stoop, crouch, kneel, or crawl. She must avoid
> concentrated exposure to vibration. She must be allowed
> to sit or stand alternatively at will, provided she is not off
> task for more than fifteen percent of the workday.

(Tr. 44).  At step four, the ALJ also determined that plaintiff was capable of performing her past relevant work as a bookkeeper and bookkeeper/secretary because her past work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" (Tr. 47).  The vocational expert who testified at the administrative hearing agreed, concluding that plaintiff could return to her work as a bookkeeper or bookkeeper/secretary as generally performed, as the demands of her past work would not exceed the RFC. (Tr. 48).  The ALJ, therefore, determined that plaintiff was not under a disability at any time from May 31, 2011, through the date of his decision.  (*Id.*)

   B.   Plaintiff's Claims of Error

      1.   The ALJ misapplied the "treating physician's rule" and failed to properly determine plaintiff's residual functional capacity.

   Plaintiff's primary argument is that the ALJ failed to give proper weight to plaintiff's treating rheumatologist, Dr. Barbara McIntosh.  (Dkt. 10, Pl.'s Mot. Summ. J. at 8-12).  Dr. McIntosh determined that plaintiff had disabling exertional limitations and required unscheduled breaks at unpredictable intervals.  (Tr. 306-13).  Plaintiff cites the prevailing rule in this Circuit when weighing a treating physician's opinion:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502,

4

404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the

ALJ's application of the rule."

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Plaintiff specifically claims that the ALJ erred when he concluded that Dr. McIntosh relied primarily on plaintiff's subjective complaints. (Dkt. 10, Pl.'s Mot. Summ. J. at 9). To the contrary, plaintiff claims that Dr. McIntosh relied primarily on clinical and objective evidence, including plaintiff's limited range of motion in both of her knees and shoulders, and diagnostic imaging that revealed evidence of a right knee replacement and degenerative arthritis in her left knee and patellofemoral joint. (*Id*.; citing Tr. 306-07). Plaintiff contends that the fact that her right knee improved following surgery fails to establish that she still does not have residual difficulties. (Dkt. 10, Pl.'s Mot. Summ. J. at 9). Indeed, plaintiff claims that improvement following surgery is simply irrelevant to her other musculouskeletal impairments, which are aggravated by her obesity. (*Id*. at 9-10). Plaintiff argues, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . ." *See Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011).

Plaintiff also contends that even assuming the ALJ made sufficient findings to give Dr. McIntosh's opinion less than controlling weight, the ALJ did not consider the factors enumerated in 20 C.F.R. 404.1527(c)(1)-(6), and for that reason the RFC should be rejected. (Pl's Mot. Summ. J. at 10-12). On this point,

plaintiff says that Dr. McIntosh treated plaintiff throughout the relevant period. (Dkt. 10, Pl.'s Mot. Summ. J. at 11).  Second, the nature of McIntosh's treatment was focused on plaintiff's musculoskeletal impairments.  (*Id*.)  Third, McIntosh provided support for her opinions, which were not inconsistent with her treatment notes.  (*Id*.)  Finally, Dr. McIntosh is a board certified rheumatologist.  (*Id*.) Plaintiff claims the ALJ did not consider these factors or give any other good reasons for discounting Dr. McIntosh's opinion.  (*Id*.)

>    2.    The ALJ failed to properly evaluate plaintiff's credibility

Plaintiff also claims that the ALJ impermissibly discounted her credibility. (Dkt. 10, Pl.'s Mot. Summ. J. at 13-17).  On this point, the ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found her statements concerning the intensity, persistence, and limiting effects of her symptoms not credible to the extent they were inconsistent with the RFC.  (Dkt. 10, Pl.'s Mot. Summ. J. at 14, quoting Tr. 45).  Plaintiff argues that while that ALJ summarized some of the treatment records and testing, he failed to identify any specific inconsistencies in the evidence as is required.  (*Id*.)

Plaintiff also argues that her reliance on unemployment benefits during the period at issue cannot form a basis to discount her credibility.  (Dkt. 10, Pl.'s Mot. Summ. J. at 15).  Plaintiff cites SSA Memorandum 10-1258, which indicates that

the receipt of unemployment benefits does not preclude receipt of disability benefits. (*Id.*; *see also Richards v. Astrue*, 370 Fed. Appx. 727, 732 (7th Cir. 2010) ("[a] desperate person might force herself to work—or in this case certify that she is able to work—but that does not necessarily mean she is not disabled").

Finally, plaintiff contends that the ALJ erred when he found her allegations inconsistent with her activities of daily living. (Dkt. 10, Pl.'s Mot. Summ. J. at 15). Plaintiff claims that she testified that she was able to do light household chores, but that her husband does more intensive activities. (*Id.* at 15-16; Tr. 58). Further, plaintiff said that she was limited in the amount of time she could work, usually 15-20 minutes before needing to stop and rest. (*Id.* at 16; Tr. 65). She testified that she spent more of her day sitting in a recliner, watching television, using a computer or reading. (*Id.*) Plaintiff testified that she could drive, but not for long periods of time. (*Id.*; Tr. 63). Plaintiff argues that performing limited activities in her home for short-periods of time do not show the capacity to work full-time in a competitive work environment. (*Id.*)

### C.    The Commissioner's Motion for Summary Judgment

#### 1.    The ALJ properly discounted Dr. McIntosh's opinion

The Commissioner argues that Dr. McIntosh's opinion was properly discounted because plaintiff's physical limitations were not well-supported by objective medical findings and were inconsistent with other evidence in the

record.  (Dkt. 13, Def.'s Mot. Summ. J. at 6-10).

As the ALJ noted, Dr. McIntosh's assessment (that plaintiff had disabling exertional limitations and would require unscheduled breaks at unpredictable intervals) (Tr. 306-13), appears to be based on plaintiff's subjective complaints, which the Commissioner claims the ALJ appropriately discounted.  (Dkt. 13, Def.'s Mot. Summ. J. at 7-8, citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (ALJ properly discounted medical opinions based on claimant's self-reporting, where ALJ appropriately found claimant was not credible); *see also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 (6th Cir. 2010) (claimant's self-reported history and subjective complaints were not adequate substitute for medical evidence supporting treating source's opinion)).  Her evidence was also inconsistent with other medical evidence , including post-operative and physical therapy notes documenting plaintiff's functional improvement.  (Def..'s Mot. at 8, Tr. 46-47, citing 246, 256-57, 264-78, 283).

The Commissioner points out that plaintiff complains that her improvement is irrelevant to limitations caused by her other musculoskeletal impairments; however, plaintiff fails to direct the court to any objective evidence that her combined impairments caused greater limitations than those the ALJ assessed.  For these reasons, the Commissioner says that plaintiff's argument must fail.  (Dkt. 13, Def.'s Mot. Summ. J. at 8, citing *Shinseki*, 556 U.S. at 409 ("[T]he

9

burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

In support of the ALJ's assessed limitations, the Commissioner points to Dr. Yap's August 2011 report that notes that aside from plaintiff's obesity, plaintiff appeared relatively normal upon physical examination, with no signs of hip or back trouble, and no neurological deficits.  (Def.'s Mot. Summ. J. at 8).  Dr. Yap also noted that plaintiff's knee problems had improved significantly following surgery.  (*Id.*, citing Tr. 261, 283-85).  Further, the Commissioner points out that Dr. McIntosh's treatment notes from September 2011 through April 2012 contain no objective findings to counter Dr. Yap's findings.  (*Id.*, citing Tr. 287-92).  The Commissioner also points to evidence that did not follow logically from Dr. McIntosh's findings.  For example, in October 2012, Dr. McIntosh noted, "[d]ecreased abduction to 100 degrees on the right and 90 degrees on the left with pain" and "subacromial bursa effusion" without tears (Tr. 296). However, imaging studies revealed no abnormalities in Plaintiff's hips and shoulders (Tr. 299-300, 303-04), and only mild degenerative changes in her left knee post-surgery (Tr. 301-02).

The Commissioner concluded that because Dr. McIntosh's opinion was not entitled to controlling weight, the ALJ appropriately assessed plaintiff's RFC based on the totality of the relevant evidence.  (Dkt. 13, Def.'s Mot. Summ. J. at

9).  The Commissioner contends that the ALJ cited subtantial evidence in making

his findings.  (*Id.*)  In making his findings, the ALJ stated:

> [T]he medical evidence supports a finding that the
> claimant's physical impairments cause some limitations
> in her ability to perform work-related activity. However,
> the undersigned finds that the claimant's reported
> activities of daily living and the objective medical
> evidence do not support her subjective complaints
> regarding the severity of such limitations. Therefore, the
> undersigned finds that the claimant retains the ability to
> perform work-related activity within the limitations set
> forth above.

(Tr. 47).  Thus, the Commissioner argues, that the ALJ complied with SSR 96-

8p's narrative discussion requirement.  *See* 1996 WL 374184, at *7.  According to

the Commissioner, the ALJ "afforded partial weight to Plaintiff's testimony

regarding her own limitations; supportably relied on objective medical evidence,

including relatively benign clinical and radiological findings; and ultimately

settled on a tempered version of Dr. McIntosh's proposed limitations that was

more consistent with the weight of the evidence[.]" (Dkt. 13, Def.'s Mot. Summ. J.

at 10, citing Tr. 45-47).

2.     The ALJ properly assessed plaintiff's credibility

The Commissioner also contends that the ALJ properly assessed plaintiff's

credibility.  (Dkt. 13, Def.'s Mot. Summ. J. at 10-15).  Here, the ALJ

acknowledged that plaintiff had impairments capable of producing her related

11

symptoms, but the Commissioner argues, that in view of the entire record, that those symptoms were not as severe as plaintiff alleged. (*Id*. at 11). Further, the ALJ gave substantial reasons for discounting plaintiff's credibility, explaining that her reports of disabling symptoms were inconsistent with (1) the objective medical evidence; (2) treatment notes documenting her "excellent" progress and completion of all personal and functional goals; (3) her significant activities of daily living, which included going for walks, driving, shopping, and doing light chores; and (4) her receipt of unemployment benefits during the alleged period of disability, which required her to certify that she was ready, willing and able to work. *See* 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *5-8.

The Commissioner contends that the ALJ identified relevant "objective findings" during his discussion of plaintiff's treatment records (Tr. 46, citing Tr. 246, 256-57, 264-78, 283). The Commissioner claims that plaintiff's argument that these findings do not identify an inconsistency in the record, is merely an attempt by plaintiff to probe the ALJ's decision for a technical flaw. (Def.'s Mot. Summ. J. at 12). For that reason, the Commissioner claims that a remand is not necessary to show why the findings of plaintiff's improved condition tend to refute plaintiff's claim that she could not even manage sedentary work. (*Id*.) The Commissioner also notes that the ALJ also relied on optimistic progress report notes. (Tr. 44-47).

The Commissioner next claims that the ALJ did not improperly penalize plaintiff for receiving unemployment benefits.  (Def.'s Mot. Summ. J. at 13).   The Commissioner argues that plaintiff's receipt of unemployment benefits during the relevant period was merely a factor to be weighed in assessing plaintiff's credibility.  (*Id*., citing *See Workman*, 105 F. App'x 794, 801-02 (6th Cir. 2004) ("There is 'no reasonable explanation for how a person can claim disability benefits under the guise of being able to work, and yet file an application for unemployment benefits claiming that [she] is ready and willing to work.'") (citation omitted).  Moreover, the case cited by plaintiff, *Richards v. Astrue, infra*, is inapposite.  Here, the ALJ cited plaintiff's receipt of unemployment benefits as evidence that she was not credible, he did not cite it as conclusive proof that she was not disabled.  (Def.'s Mot. Summ. J. at 13, citing Tr. 47).

Finally, the Commissioner contends that the ALJ properly juxtaposed plaintiff's allegations of disabling limitations against evidence that she was capable of doing laundry, light cleaning, driving, going for walks,, and shopping with some assistance from her husband.  (Def.'s Mot. Summ. J. at 14, Tr. 45). Morever, the Commissioner argues that even if the ALJ had put too much emphasis on plaintiff's daily activities, any such error was harmless as her daily activities were only one factor in the ALJ's credibility discussion.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

14

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   <u>Analysis</u>

1.   Sequential Analysis - Step Three

In this case, there is no Disability Determination and Transmittal form or

19

PRFC assessment form signed by a medical advisor as to plaintiff's physical impairments in the record, and thus no medical expert's opinion on the issue of equivalency.  Here, as acknowlegded by the Commissioner, ALJ's cannot rely on the findings of a single decision maker, but are required to obtain a medical opinion on equivalence at step three.  (Dkt. 13, Def.'s Mot. Summ. J. at 4, citing *Byberg v. Comm'r of Soc. Sec.*, No. 12-10158, 2013 WL 1278397, at *3 (E.D. Mich. Mar. 11, 2013).  The Commissioner argues, however, that remanding to obtain a medical opinion on equivalence would serve no purpose as the record lacks sufficient medical findings to support favorable step-three decision.  (*Id.*) This court disagrees.

The great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton v. Astrue*, 2012 WL 1852084, at *13 (D.N.H. May 11, 2012) (collecting cases); *see also Byberg*, No. 12-10158, 2013 WL, at *2 ("Defendant's attempt to expand the purposes of the SDM model beyond the initial determination of disability and into the proceedings before the ALJ is misplaced."); *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (remanding because a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated); *Hayes v. Comm'r of Soc. Sec.*, 2013 WL 766180, at *8-9 (E.D. Mich. Feb. 4, 2013) (remanding because no expert opinion on equivalence in the record),

20

adopted by 2013 WL 773017 (E.D. Mich. Feb. 28, 2013); *Maynard v. Comm'r of Soc. Sec.*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").  While the undersigned is not necessarily convinced that plaintiff can show that her physical impairments satisfy the equivalency requirements, the undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p.  This is especially true here as the Commissioner argued that plaintiff pointed to "no objective evidence that her combined impairments cause greater functional limitations than the ALJ assessed."  (Dkt. 13, Def.'s Mot. Summ. J. at 8).  Further, the Commissioner acknowledged that Dr. John Yap noted that plaintiff suffered from "marked obesity", which in combination with her other limitations could have an effect on her RFC and/or result in a finding of disability.  (*Id.*, citing Tr. 261).  For these reasons, the undersigned recommends that, on remand, the ALJ should obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments.

Because a remand is necessary at step three and a determination may necessarily impact plaintiff's RFC, the undersigned will not address plaintiff's additional claims that go to the RFC determination.

2.    The ALJ's Credibility Determination

Plaintiff points to her alleged, severe degenerative osteoarthritis of the bilateral knees, status post right total knee replacement, and obesity and argues that the ALJ erred in concluding that her testimony as to the intensity and persistence of her symptoms associated with these impairments was not entirely credible. As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").

"It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest

with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

Here, until a proper step three equivalency finding can be made on remand, the undersigned cannot determine whether the ALJ erred when he assessed plaintiff's credibility. And, following a step three equivalency finding, such an assessment may render Plaintiff's claim on this point unnecessary.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the decision of the Commissioner be **REMANDED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 10, 2015                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 10, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7887
                                        tammy_hallwood@mied.uscourts.gov